

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA GONZALEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Ronald A. Guzmán |
| ) | |
| HOULIHAN'S RESTAURANTS, INC., ) | 05 C 7193 |
| DOUGLAS HAMRICK, former ) | |
| Manager; KIMBERLY SIEBEL, ) | |
| former General Manager; ) | |
| FRANCIS KING, Human Resources ) | |
| Director, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jessica Gonzalez has sued Houlihan's Restaurants Inc. ("Houlihan's") for race and national origin discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 ("section 1981"). Gonzalez has also sued Douglas Hamrick and Kimberly Siebel, her former supervisors, for race and national origin discrimination and retaliation pursuant to section 1981.[1] Before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons set forth below, the Court grants in part and denies in part the motion.

## Facts

Gonzalez is Hispanic and of Mexican descent. (Defs.' LR 56.1(a)(3) Stmt. ¶ 1.) Gonzalez was a server at the Houlihan's restaurant in the Old Orchard Shopping Mall from October 1, 2002, to June 7, 2006. (*Id.* ¶ 18.) Gonzalez's sister, Marysol Gamboa was also a

---

[1] Although Gonzalez originally sued Francis King, Houlihan's human resources manager, she no longer pursues any claim against King. (*See* Pl.'s Br. 15.) Thus, the Court grants defendants' motion for summary judgment as to King.

server at that restaurant from November 2002 until the restaurant closed in September 2005. (*Id.* ¶ 19.) At all times relevant to the complaint, Carlos Aguilar, Gonzalez's boyfriend and father of her unborn child, was a server at the restaurant. (*Id.* ¶ 20.)

Employees at the restaurant were required to clock in and clock out at the beginning and end of their shifts by typing a code consisting of the last four digits of the server's social security number into one of several terminals located in the restaurant. (*Id.* ¶ 28.) If a server is not on the schedule for the day, a manager would have to clock the employee in. (*Id.*)

On June 6, 2004, Gonzalez and Gamboa were all scheduled to begin work at 11:00 a.m. (*Id.* ¶ 23.) Although Aguilar was not on the schedule, he had agreed to cover for another server that day. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 7.) Gonzalez and Gamboa drove to work together, and Houlihan's records show that Gonzalez, Gamboa, and Aguilar clocked in at 11:20 a.m. (Defs.' LR56.1(a)(3) Stmt. ¶ 23.) When a customer arrived in Aguilar's assigned seating area, Service Manager Douglas Hamrick began searching for Aguilar and saw that Aguilar had clocked in at 11:20 a.m. (*Id.* ¶ 31.) Hamrick asked Gonzalez if she knew whether Aguilar was at the restaurant, and at first she answered that she did not know and then upon being asked again she said she thought she saw his car in the parking lot.[1] (*Id.* ¶ 32.) Aguilar called the restaurant after 11:20 a.m. to inform Hamrick that he had overslept and would not be able to arrive until after noon. (*Id.* ¶¶ 26-27.) He arrived at work at 12:15 p.m. (*Id.* ¶ 27.) Hamrick did not find the improper clocking-in of Aguilar to be a "big deal," conducted no investigation into the matter and reported it to Manager Kimberly Siebel sometime that evening. (Pl.'s LR 56.1(b)(3)(C) ¶ 18.)

---

[1] It is disputed whether, in response to Hamrick's inquiry as to the location of Aguilar, Plaintiff responded by telling Hamrick that Aguilar was in the basement.

2

On June 7, 2004, Siebel called Gonzalez and Gamboa at approximately 9:00 a.m. to inform them that both were suspended from work until the issue of the improper clocking-in of Aguilar was resolved. (Defs.' LR56.1(a)(3) Stmt. ¶ 35.) Gonzalez and Gamboa denied that they had clocked-in Aguilar. (*Id.*) Under the Houlihan's Employee Handbook, the falsification of time records was a terminable offense. (*Id.* ¶¶ 55-56.) That day, Hamrick also issued a written reprimand of Gonzalez, Gamboa and Aguilar for arriving to work late on the previous day. (Pl.'s Exs. A-1, A-2, and A-3.)

Gonzalez immediately called Francis King, Houlihan's Human Resources Director, via the company's toll-free hotline. (Defs.' LR56.1(a)(3) Stmt. ¶ 37.) Gonzalez discussed her suspension and complained that Hamrick had discriminated against her and other Hispanic servers by assigning more profitable tables to non-Hispanic servers. (*Id.* ¶ 38.) When asked for an example of a discriminatory assignment of tables, Gonzalez stated that on June 6, she was only assigned four or five tables, while two white servers were assigned a greater amount of tables. (*Id.* ¶ 39.) Plaintiff also told King that Hamrick assigned Hispanic servers to fewer shifts than white servers and that Hamrick only liked to hire "American" or "white" servers. (Pl.'s LR56.1(b)(3)(C) Stmt. ¶ 33.)

Later that day, King spoke with Siebel, who stated that Gonzalez had received less preferential shifts due to her failure to attend a required wine-tasting course. (Defs.' LR56.1(a)(3) Stmt. ¶ 46.) King, Siebel and Hamrick discussed Gonzalez's allegations of discriminatory practices. (*Id.* ¶¶ 51-52.) That same day, King called Gonzalez and informed her that she had been terminated and any difference in the assignment of tables was due to her failure to attend the mandatory wine class, which only one server attended. (*Id.* ¶ 57; Pl.'s LR

3

56.1(b)(3)(C) ¶ 41.)[2] Gamboa had not complained to Human Resources, and she was not terminated. (Pl.'s LR 56.1(b)(3)(C) ¶ 36.)

On June 30, 2004, Ms. Lewis, a Caucasian server, obtained a half-price employee meal, gave it to her boyfriend and left the restaurant without paying for it, and she never paid for the meal. (*Id.* ¶ 37.) Viewing the record in the light most favorable to Gonzalez, Lewis quit and was not terminated by Houlihan's. (*Id.*)

Gonzalez sues Houlihan's for national origin and race discrimination pursuant to Title VII based on the reduction of preferred work assignments (Count I) and her termination (Count II) and retaliation (Count III). Gonzalez sues Houlihan's, Siebel and Hamrick for national origin and race discrimination pursuant to Section 1981 based on the reduction of preferred work assignments (Count IV), her termination (Count V) and retaliation (Count VI).

## Discussion

Summary judgment is to be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court resolves all ambiguities and draws all reasonable inferences in favor of the nonmoving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). "A motion for summary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michael*, 913 F.2d 327, 331 (7th Cir. 1990). Accordingly, if there is a dispute over a material fact, "such that a

---

[2] A triable issue of fact exists regarding whether Hamrick was involved in the decision to terminate Gonzalez because of Houlihan's admission during the IDHR administrative proceedings that he participated in the decision.

4

reasonable jury could return a verdict for the nonmoving party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Gonzalez alleges that defendants discriminated against her based on her race and national origin in violation of Title VII and Section 1981. Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, as is enjoyed by white citizens . . . ." and defines making and enforcing of contracts as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981; *see Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 614 (1987). "Because we evaluate [Section] 1981 claims under the same rubric as Title VII claims, we need not address them separately." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 299 (7th Cir. 2004).

## I. Reduction of Preferred Work Assignments

Defendants argue that Gonzalez's Title VII claims based on the reduction of preferred work assignments are barred as exceeding the scope of her EEOC charge. Because the Court must address the merits of Gonzalez's termination claim under Section 1981, which has no charge-filing requirement, the Court will assume *arguendo* that her Title VII claim falls within the scope of her EEOC charge. *See, e.g., Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 530-31 (7th Cir. 2003). Because even if her Title VII claim based on the reduction of preferred work

5

assignments were to fall within the scope of her EEOC charge, it would fail on the merits, as would her related Section 1981 claim.

With regard to Gonzalez's claims based on Hamrick assigning Hispanic servers to fewer shifts and less desirable section assignments, even if she could satisfy the other elements of her *prima facie* case, she has failed to establish a triable issue regarding whether a similarly situated individual not in her protected class was treated more favorably. Although she argues that in general Hamrick gave servers like herself fewer shifts and less desirable section assignments, she relies solely on her own and Aguilar's statements (*see* Pl.'s LR 56.1(b)(3)(C) ¶¶ 12-14, 31) and in doing so fails to point to a single server not in her protected class who received more shifts and more desirable section assignments.

That leaves Gonzalez with her claims based on Hamrick's assigning four more tables to two Caucasian servers than he assigned to either her or Gamboa on June 6, 2004, the day prior to Gonzalez's termination. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 41.) As to these claims, she has failed to create a genuine issue of material fact regarding whether she suffered an adverse employment action. An adverse employment action is one that makes "a materially adverse change in the terms and conditions of employment." *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993).

Gonzalez has failed to provide any evidence that the allocation of tables on June 6, 2004 caused a material adverse change in her employment conditions. (*Id.* ¶¶ 41, 49.) For example, there is no evidence that: (1) she received less tips than the non-Hispanic servers that day; (2) the number of customers she served at her assigned tables were fewer than those served at the tables of non-Hispanic servers; or (3) that the total of the bills of the customers at her tables was less than the total of the bills of customers at tables assigned to non-Hispanic servers. (*See*

*generally* Pl.'s LR 56.1(b)(3)(B) Stmt.; Pl.'s LR 56.1(b)(3)(C) Stmt.; Pl.'s Ex. B, Gonzalez Aff. ¶¶ 4-9 (the only paragraphs of Gonzalez's affidavit cited in Pl.'s LR 56.1 submissions).) Given the paucity of facts in the record, Gonzalez has failed to establish a genuine issue of material fact as to whether Houlihan's allocation of tables on June 6, 2004 constituted a reassignment with significantly different responsibilities or a decision causing a significant change in benefits. The allocation of tables on a single day does not come close to rising to the level of severity or duration required by the law.

Based on the record before the Court, Gonzalez has failed to raise a genuine issue of material fact regarding her Title VII and Section 1981 claims based on the reduction in preferred work assignments, and thus, cannot make out her *prima facie* case. Accordingly, the Court grants Houlihan's summary judgment motion as to Counts I and IV.

## II. Termination

There are two ways a plaintiff can defeat a motion for summary judgment in a Title VII case. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Under the direct method, a plaintiff can offer direct or circumstantial evidence that his employer's action was motivated by an impermissible purpose. *Id.* Alternatively, the indirect burden-shifting approach allows that plaintiff to raise an inference of discrimination by offering sufficient evidence to establish a *prima facie* case. *Id.* To establish a *prima facie* case of discrimination, a plaintiff must show that: (1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside of her classification more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).

7

Gonzalez concedes that she does not have any direct evidence of discrimination as to her termination.[3] Accordingly, the Court utilizes the burden-shifting analysis.

It is undisputed that Gonzalez belongs to a protected class and that her termination was an adverse employment action. Thus, the first and third elements of Gonzalez's *prima facie* case are satisfied.

Further, Gonzalez has created a triable issue of fact regarding the remaining elements of her *prima facie* case as well as whether Houlihan's proffered reason for her termination was a pretext for discrimination. As to the second element of her *prima facie* case (as well as to pretext), Gonzalez has raised a genuine issue of material fact regarding whether she was performing her job satisfactorily because a reasonable jury could find Aguilar was not on the schedule for June 6, 2004 and consequently a manager had to clock him in and out. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 28; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 7.) Thus, a jury could reasonably infer that Houlihan's management did not in good faith believe that Gonzalez had clocked in Aguilar. As to the fourth element of her *prima facie* case, Gonzalez has successfully raised a triable issue as to whether a similarly situated person outside of her protected class was treated more favorably because a reasonable jury could find that a white server, who had given her boyfriend an employee discount and did not pay for the meal,[4] was not terminated by Houlihan's. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 36.) Because Gonzalez has created triable issues regarding her claims based on her termination, the Court denies defendants' motion for summary judgment as to Counts II and V.

---

[3] Although Houlihan's argues that this claim is beyond the scope of Gonzalez's Illinois Department of Human Rights ("IDHR") charge, the Court disagrees because the charge addressed her allegation that white servers were given more tables and shifts than Mexican servers and Houlihan's submitted evidence to the IDHR to rebut the allegation. (*See* Pl.'s Ex. H-1, Letter from Houlihan's to IDHR of 11/22/04 at HR00159.)

[4] Both the white server and Gonzalez were accused, in essence, of theft.

## II. Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). "An employee bringing a retaliation claim may use either the 'direct' or 'indirect' methods of proof to support her claim." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008) (quoting *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005)). "To establish retaliation under the direct method of proof, a plaintiff must offer evidence that [s]he engaged in a statutorily protected activity, that the defendants subjected h[er] to an adverse employment action and that a causal connection exists between the two events." *Treadwell v. Office of Ill. Sec'y of State*, 455 F.3d 778, 781 (7th Cir. 2006). "Under the indirect method, a plaintiff can establish a *prima facie* case of retaliation by showing that '(1) after lodging a complaint about discrimination, (2) only he, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) he was performing his job in a satisfactory manner.'" *Id.* at 782 (quoting *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 642 (7th Cir. 2002)).

Gonzalez seeks to create a genuine issue of fact as to retaliation utilizing both the direct and indirect methods. To counter both methods of proving retaliation, defendants aver that Gonzalez did not engage in statutorily protected activity because her complaints were vague and insufficient as a matter of law, citing *Durkin v. City of Chicago.*, 341 F.3d 606 (7th Cir. 2003). In *Durkin*, where the plaintiff made vague complaints concerning matters other than harassment and failed to utilize her employer's policy for reporting harassment, the court held that she did not engage in protected expression and stated that "[a]n employer cannot retaliate if there is nothing for it to retaliate against." *Id.* at 615.

9

Unlike the plaintiff in *Durkin*, Gonzalez reported the alleged discrimination by using the officially-sanctioned, toll-free hotline to contact King, Houlihan's Human Resources Director. (Defs.' LR 56.1(a)(3) ¶ 37.) Gonzalez told King that Hamrick had taken shifts out of the schedules of Hispanic employees and only hired "American" or "white" servers.[5] (Pl.'s LR 56.1(b)(3)(B) ¶ 38.) Gonzalez provided King with a specific example of Hamrick's allocation of tables on June 6, 2004.[6] (*Id.* ¶ 39.) Contrary to defendants' assertions otherwise, Gonzalez's complaints of discrimination were not too vague to be considered protected activity. Thus, Gonzalez has raised a triable issue regarding whether her complaints constitute protected expression.

To counter the direct method of proving retaliation, defendants argue that Gonzalez has failed to establish a triable issue as to whether a causal connection exists between her protected expression and her termination. "A 'telling temporal sequence' can establish the required nexus, *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1315 (7th Cir. 1989), but by 'telling' 'we mean that the employer's adverse action follows fairly soon after the employee's protected expression.' *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998)." *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998). "One day might do it." *Id.*, 149 F.3d at 557.

It is undisputed that Gonzalez was terminated the same day she complained to Houlihan's Human Resources Director that employees at the Old Orchard restaurant were being discriminated against based on their being Hispanic. Because her termination followed hours after her protected expression, she has established a triable issue as to the causal connection.

---

[5] "A plaintiff need not prevail on her Title VII discrimination claim or have opposed an action that in fact violated Title VII to win a retaliation claim." *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002). "All that is required is that 'she reasonably believed in good faith that the practice she opposed violated Title VI.'" *Id.* (quoting *Alexander v. Gerhardt Enters., Inc.*, 40 F.3d 187, 195 (7th Cir. 1994)).

[6] *See supra*, note 5.

Therefore, having established triable issues regarding her protected expression and causation, Gonzalez's retaliation claims must be tried unless Houlihan's presents unrebutted evidence that Gonzalez would have been fired absent her allegations of discrimination. *See Stone*, 281 F.3d at 644; *see Benders v. Bellows & Bellows*, __ F.3d __, Nos. 06-1487, 06-2716, 2008 WL 364578, at *6 (7th Cir. Feb. 12, 2008) ("Summary judgment is only appropriate if there is no material issue of fact as to whether [defendant]'s explanation is pretext for retaliation.").

Houlihan's argues that it would have fired Gonzalez for improperly clocking in Aguilar even if Gonzalez had not called the hotline to complain of discrimination. As discussed above, however, Gonzalez has raised a triable issue such that a reasonable jury could find Aguilar was not on the schedule for June 6, 2004 and consequently a manager had to clock him in and out. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 28; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 7.) Thus, a jury could reasonably infer that Houlihan's management did not in good faith believe that Gonzalez and clocked in Aguilar. Accordingly, Gonzalez's retaliation claim must be tried.

Likewise, under the indirect method of establishing retaliation, Gonzalez has raised a genuine issue of fact regarding each element of her *prima facie* case as well as pretext. First, as discussed above, on June 7, 2004, Gonzalez complained of Houlihan's discrimination against Hispanics to the Human Resources Director.

Next, Gonzalez has raised a triable issue regarding whether she, and not a similarly situated employee who did not complain, was terminated. Gonzalez states that only she, and not Gamboa (who was a server at the restaurant, clocked in at the same time as Gonzalez on June 6, 2004, was suspended for suspicion of having clocked-in Aguilar but did not complain about discrimination), was terminated. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 36.) Defendants argue that Gamboa was not similarly situated to Gonzalez because Gamboa was not dating Aguilar or

carrying his unborn child. Given that Gamboa's position and suspected conduct were similar and given the fact that Gonzalez has raised a triable issue regarding whether their performance was similar, *i.e.*, that management must clock in servers who fill in for other servers, there are sufficient facts in the record from which to conclude that but for the complaint of discrimination, Gonzalez and Gamboa were similarly situated.

As discussed above in the context of her discrimination claims based on her termination, Gonzalez has raised a genuine issue of material fact regarding whether she was performing her job in a satisfactory manner. Further, in the same vein, she has also raised a triable issue regarding whether defendants' proffered reasons for her termination are a pretext for discrimination based on retaliation.

In sum, Gonzalez has established triable issues regarding retaliation via the direct and indirect method. The Court therefore denies defendants' motion for summary judgment as to Counts III and VI.

## Conclusion

For the reasons stated above, the Court grants in part and denies in part defendants' motion for summary judgment [78-1]. The Court grants the motion as to defendant King and she is hereby terminated as a defendant, but in all other respects, the Court denies the motion.

SO ORDERED            ENTERED: 3/20/08

HON. RONALD A. GUZMAN
U.S. District Court Judge