UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JESSICA GONZALEZ, | ) |
| Plaintiff, | ) |
| v. | ) No. 05 C 7193 |
| | ) Magistrate Judge Jeffrey Cole |
| HOULIHAN'S RESTAURANTS, INC. | ) |
| DOUGLAS HAMRICK, and | ) |
| KIMBERLY SIEBEL, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This somewhat convoluted proceeding over a bill of costs has been over a year in the making, with three different versions of the bill and accompanying briefing. The plaintiff knowingly filed this suit under a false name – she had used other false identifiers and documents in her daily life as well -- and Judge Guzman expressed concern over the truthfulness of representations made by the defendants about the availability of one of their witnesses. In the end, the plaintiff asks that I exercise my discretion and excuse compliance with the requirements of the Federal Rules of Civil Procedure that require her to pay the statutorily mandated costs, because she is, she claims, indigent. For the reasons that follow, I decline to do so.[1]

---

[1] Discretion denotes the absence of a hard and fast rule. *Langnes v. Green*, 282 U.S. 531, 541 520 (1931); *Rogers v. Loether*, 467 F.2d 1110, 1111-12 (7th Cir.1972)(Stevens, J.). Thus, on virtually identical facts, two decision makers can arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *United States v. Banks*, 546 F.3d 507, 508 (7th Cir.2008). *Cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir.2006)(Posner, J.) ("The striking of a balance of uncertainties can rarely be deemed unreasonable...."). An abuse of discretion occurs when no reasonable person could agree with the district court's decision. *United States v. Harris*, 2008 WL 2600992, *6 (7th Cir.2008); *United States v. Jefferson*, 252 F.3d 937, 940 (7th Cir.2001); *Roadway Exp., Inc. v. U.S. Dept. of Labor*, 495 F.3d 477, 484-485 (7th Cir.2007).

The trial in this case – in which plaintiff charged defendants with discrimination under Title VII – concluded on December 11, 2008. The defendants were the prevailing party. They filed their bill of costs on January 9, 2009. It claimed $9,536.96 – $342 for summons and subpoena service; $6,753.90 for a transcript; $2,125.16 in witness fees; $297.90 for copies; and a $20.00 docket fee. But that request had a short shelf-life. Less than a week later, the defendants realized they needed another $901 in witness costs. They had flown in a witness from Kansas City, Frances King, and put her up in a hotel for three nights. So that brought the total to $10,437.96. The filing was tardy, for a bill of costs has to be filed within thirty days of the entry of judgment under Local Rule 54.1. The defendants moved for leave to file, giving no explanation for their lateness. (Dkt. # 160). Judge Guzman granted their motion. (Dkt. #164).[2]

Defendants should have been content with their original request for $9,536.96. When they tacked on the additional $901 for Ms. Frances, it brought to light certain information and precipitated a motion for relief from judgment from the plaintiff. (Dkt. 167). It seems that Ms. King – the decision-maker involved in plaintiff's case – offered a good amount of evidence favorable to plaintiff during her deposition. Plaintiff determined it would be a valuable strategy to call Ms. King as a witness during her case-in-chief. But Ms. King lived outside the district, so plaintiff went through defendants' counsel, who told plaintiff that they had no control over Ms. King and no knowledge of whether she would be testifying or attending the trial. She was, however, listed as a "may call" witness on the defendants' witness list. When plaintiff's attorney informed defendants' attorney that

---

[2] The defendants neither moved for an extension of time in which to seeks costs before the original deadline, see Local Rule 54.1 ("The court may, on motion filed within the time provided for the filing of the bill of costs, extend the time for filing the bill."), or demonstrated good cause for an extension of time. See Fed.R.Civ.P. 6(b)(1)(". . . court may, for good cause shown, extend the time . . ."); Fed.R,Civ,P, 83; 28 U.S.C. § 2071(a).

he would contact Ms. King, herself, defendants' attorney now said that she was a client, and that he would not be allowed to speak to her directly.

At the pretrial conference, defendants' attorney made essentially the same representation to the court: he had no idea whether she would testify and that even if she did, she absolutely had to leave by the morning of the second day of the trial. (*Order of July 1, 2009* (Dkt. # 185)). That is where the bill of costs comes in. The pretrial conference convened on December 3, 2008, but the airline ticket attached to defendants' bill of costs shows it was purchased for Ms. King on the evening of that same day. Moreover, the incoming flight arrived on the first day of trial, and the departing flight left on the *evening* of the *last day* of trial. So clearly, the representations to the court – and to plaintiff – were not accurate. And that story was maintained at a continuation of the pretrial conference two days later and through the beginning of the trial. As it turned out, while plaintiff was presenting her case-in-chief, assuming Ms. King would not be available as a witness, Ms. King was already in Chicago.

When plaintiff's counsel inadvertently discovered Ms. King in a witness room on the third day of trial – apparently after plaintiff had rested but before the trial reconvened – he brought it to the court's attention, and Judge Guzman indicated he'd allow the plaintiff to call Ms. King even though he had rested the day before.

> Judge Guzman: "I know, but now you know she is available. Do you want to call her?"
>
> Pltf's Counsel: "No, I'll let her be called in their case now. I mean, she's here. So --- I was intending to use her deposition testimony."
>
> Judge Guzman: "So you're not asking to call her?
>
> Pltf's Counsel: "I'm not asking to call her."

> Judge Guzman: "Very well."
>
> * * * * *
>
> Judge Guzman: . . . So I just want to make the record clear, and I want you to understand that I am giving you that opportunity now. If you wish to call her as part of your case-in-chief, I will allow you to do that. If you don't wish to do that, then let's make that clear now."

(Trial Transcript (12/10/08), at 4-5, 16).[3]

Thus, on the one hand, the plaintiff did have an opportunity to call Ms. King in her case-in-chief and, for whatever reason, chose not to do so. But the fact remains that the court and plaintiff's counsel had been misled all along. As Judge Guzman eventually ruled in denying plaintiff's motion for relief from judgment, "after a hearing on the motion for relief from judgment, the record shows that although defendant could have acted with a little more candor, plaintiff had ample opportunity to call Ms. King in her case in chief and to cross-examine King regarding any possible bias." (Dkt. # 193).

While the rulings on the post-trial motions were pending, defendants were allowed to "withdraw[] their bill of costs without prejudice to its refiling." (Dkt. #188). Defendants "refiled"

---

[3] In their Reply in Support of Re-filed and Amended Bill of Costs, the defendants contend that the plaintiff and the court were informed that Ms. King would be available at the trial as a witness during a pretrial conference five days before trial. But there is no support for this contention, and it does not square with Judge Guzman's observation that the defendants could have exhibited greater candor in their handling of the situation. (*Reply in Support of Re-filed and Amended Bill of Costs*, at 7-8). They cite pages 31-32 of their Exhibit C, attached to that brief, but that exhibit has just seventeen pages, covering pages 83-100 of a transcript form December 9, 2008, the second day of the trial. They also cite the above exchange, but that, as indicated in the text, was from December 10, the third day of the trial. They provide no evidence of what was said five days before trial. Unsupported statements in briefs are not evidence and are not to be credited. *Woolard v. Woolard*, 547 F.3d 755 (7th Cir. 2008). Indeed, there is perhaps no more frequently articulated and consistently adhered to principle in the Seventh Circuit cases than this. *See e.g., Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 853 (7th Cir.2002); *United States v. Chambers*, 192 F.3d 374, 377-78 (3d Cir.1999); *Ho v. Donovan*, 569 F.3d 677, 682 (7th Cir. 2009); *United States v. Stevens*, 500 F.3d 625, 628-629 (7th Cir.2007); *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 610-611 (7th Cir.2006); *United States ex rel. Feingold v. AdminiStar Federal, Inc.*, 324 F.3d 492, 494 (7th Cir. 2003).

their bill of costs on October 13, 2009. This time, defendants asked for $7,986.02. (Dkt. #194). They still sought $342 in summons and subpoena fees and $20 in docket fees, but made the following changes: $5,383.72 for a transcript (down from $6,753.90), zero in witness fees (down from $2,125.16), $405.70 for copies (up from $297.90), and $1,834.60 in costs for interpreters (up from zero). No explanations were offered for the changes, and of course, given the cuts in the request, the plaintiff did not quibble. No longer were costs associated with Ms. King included.

When the prior bill of costs was withdrawn, I noted that "any previously made objections to the bill of costs that were part of the briefing that was already on file prior to today may be reasserted in the event the Motion for Bill of Costs is refiled. In the event the Motion for Bill of Costs is refiled, the plaintiff shall at the same time resubmit the briefs that were pending on 8/3/09." (Dkt. #188). But plaintiff did not reassert any of the arguments regarding the costs that she had previously raised or resubmit the briefs. As a result, it is difficult to tell exactly what is still an issue. But the previous arguments are easily addressed, just in case they are still in play. Plaintiff had earlier argued that the costs the defendants claimed for transcripts should be reduced by $290.80. As the defendants' latest filing represents a $1400 reduction, it is understandable why plaintiff did not reassert that argument. The same goes for witness fees, which the plaintiff had attacked similarly; now, the defendants don't claim any.

Plaintiff also questioned the fees for subpoenas and summonses, for which defendants maintain their claim for $342. That covers service on three witnesses at two locations, one on the northern edge of the city limits of Chicago and the other in Skokie. The defendants are entitled to recoup service costs that do not exceed the marshal's fees, *Collins v. Gorman*, 96 F.3d 1057, 1060 (7th Cir. 1996), which are set at $55 per hour plus travel expenses. 28 C.F.R. §0.114(a)(3). The

5

invoice for the two trips indicates that $120 was charged for service in each case. That's about two hours back and forth from downtown in each instance, which seems about right. There is an additional charge for "witness fees advanced" in connection with one trip, however, which is unexplained as defendants request *no* witness fees. Assuming that defendants have now categorized witness fees under service fees, the $98 requested for two witnesses is $18 too much under 28 U.S.C. § 1821, which limits the witness fee authorized by § 1920 to $40 per day.

Finally, plaintiff argued that no case law or statute entitled the defendants to recover the cost of a Spanish-English interpreter at the depositions *of plaintiff* and one other witness. Oddly, defendants had not requested fees for the interpreter under the obvious category, compensation of interpreters and costs of special interpretation services. 28 U.S.C. § 1828. Instead, they mistakenly made the $1834.60 they sought a part of court reporter costs. In any event, the law allows "compensation of court appointed experts, *compensation of interpreters,* and salaries, fees, expenses and costs of special interpretation services under [28 U.S.C. § 1828]." 28 U.S.C. § 1920(6)(emphasis supplied); *see Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 727 (7th Cir. 2008)(indicating that statute covers costs of oral translation).

The plaintiff's objection was particularly baseless since it was the plaintiff who was either unable to testify in English or uncomfortable with the prospect of having to do so. It was, in short, a cost necessitated by the plaintiff, not a luxury indulged in by the defendants. Consequently, it should be and is a compensable cost. *Compare United States v. Goodwin,* 449 F.3d 766, 772 (7th Cir.2006)(" It is in that sense that he is the author of the [situation]of which he complains."); *United States v. Cohen,* 145 F.2d 82 (2nd Cir.1944) (L. Hand, J.); *cert. denied,* 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637 (1945) ("It is particularly unreasonable for the [party] ... to complain of that ...of which

6

[she was] the author[ ].").

That brings us to the final chapter in the bill of costs epic. Now, plaintiff makes a new, all-encompassing attack on every aspect of the bill of costs. She says shouldn't have to pay anything, because she is indigent and filed her lawsuit in good faith. The defendants vehemently deny that the law suit or its prosecution was in good faith, and they claim there were scores of misrepresentations in the various motions she made – many of which stemmed from her alleged lies about her use of aliases – and not from purely positions her lawyers took, although those are chargeable to her as well. *See, e.g., Farzana K. v. Indiana Dept. of Education*, 473 F.3d 703 (7th Cir. 2007); *United States v. Babul*, 476 F.3d 498 (7th Cir. 2007);*Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir. 2006); *Coleman v. Smith*, 814 F.2d 1142, 1146 (7th Cir.1987).

It is within the district court's discretion to consider a plaintiff's indigency in denying costs under Rule 54(d). *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006). But indigence does not automatically excuse the losing party from paying the prevailing party's costs. *Rivera*, 469 F.3d at 635. *See Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733-34 (7th Cir. 1999). If it did, we would have a rule, not a matter for the court's discretionary judgment. The plaintiff has the burden of demonstrating that she is "incapable of paying the court-imposed costs at this time or in the future." *Rivera*, 469 F.3d at 635; *McGill*, 18 F.3d at 459. She has to provide the court with "sufficient documentation to support such a finding" – documentation that "should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses." *Rivera*, 469 F.3d at 635. Of course, here, as in all cases, credibility counts, and a court is not obligated to accept uncritically and unhesitatingly whatever is in an affidavit. People will lie when it is to their advantage, *Schmude v. Tricam Industries, Inc.*, 556 F.3d 624, 628

(7th Cir. 2009). And so it is not unexpected that affidavits of indigency are not always accurate and are subject to manipulation. *See e.g., In re City of* Chicago, 500 F.3d 582 (7th Cir. 2007); *Mullins v. Hallmark Data Systems, LLC*, 511 F.Supp.2d 928 (N.D.Ill. 2007); *Lukaneva v. Levy Restaurants at McCormick Place*, 2006 WL 1823169 (N.D.Ill. 2006).

Plaintiff has submitted an affidavit in which she claims she has been out of work since January 2009, when she lost her part-time job as a waitress making $300-400 per week. (Pl.Aff., ¶ 4). She rents an apartment with her husband; they have a five-year-old daughter. (Pl.Aff., ¶¶ 3, 4). They pay $450/month in rent, $100/month for electricity, $50-100/month for natural gas, $500/month for groceries, and $200/month for landline and cell phones. (Pl.Aff., ¶ 5). They own two vehicles, a 1996 Ford Mustang and a 2000 Ford pickup. (Pl.Aff., ¶ 6). Payments on the pickup run $500/month. (Pl.Aff., ¶ 8). They spend $300/month on gasoline. (Pl.Aff., ¶ 6). The plaintiff has run up a credit card debt of $8000; her husband has, too. (Pl.Aff., ¶ 8). They each make a minimum payment of $300/month. (Pl.Aff., ¶ 8). Plaintiff says they don't have any assets and that they live off her husband's salary as an insurance agent, although she makes no mention of what that salary is. (Pl.Aff., ¶ 11). Plaintiff will only say that his "income is just enough to allow [them] to pay [their] expenses, with no room for extras." (Pl.Aff. ¶ 11). She says she has been looking for work but hasn't found any. (Pl.Aff., ¶ 12).

Significantly, the plaintiff has chosen not to submit any tax returns in support of these representations, especially that of her husband. She could easily have done so. That she did not calls to mind the familiar rule that if a party has it peculiarly within her power to produce evidence relevant to a claim, the fact that she does not do so can create at least an inference that the information would be unfavorable. *Graves v. United States*, 150 U.S. 118, 121 (1893); *Miksis v.*

*Howard,* 106 F.3d 754, 763 (7th Cir.1997). But even if the husband's income was less than the family's expenses required, that would not equate to indigency. *See Fairley v. Andrews,* 2008 WL 961592, *4 (N.D.Ill. 2008). As a result, there is no way to tell whether the family is indigent under any standard. *See* http://aspe.hhs.gov/poverty/09poverty.shtml (Department of Health and Human Services poverty guideline for family of three at $18,310 per year).

If one disregards all the evidence that is currently available and would otherwise bear on her credibility under Rule 608(b), Federal Rules of Evidence, and uncritically accepts the plaintiff's affidavit – which I do not -- it would appear that presently she would have difficulty paying nearly $8,000 in costs. It does say that she believes she will never be able to pay the costs. But that sort of tendentious speculation is meaningless. The Seventh Circuit "has long 'reject[ed] the idea that speculation can be employed as a substitute for proof.'" *United States v. Landry,* 257 F.2d 425, 431 (7th Cir.1958). *Accord, In re Cohen,* 507 F.3d 610, 614 (7th Cir.2007)(speculation is not evidence); *Lauth v. McCollum,* 424 F.3d 631, 634 (7th Cir.2005)("hypothesis is not proof"). *See also United States v. Holland,* 445 F.2d 701,793 (D.C.Cir. 1971). More importantly, it is impossible to forecast the events still in the womb of time. *Dennis v. United States,* 341 U.S. 494, 551 (1951)(Frankfurter, J., concurring). The plaintiff's financial situation may improve substantially with new or better jobs for herself or her husband; she could even win the lottery

Plaintiff has worked in the past; she just doesn't happen to have a job now, and it would be unreasonable to conclude that she will never work again or that her husband's financial situation is inevitably destined to remain as it is today. one now. Present unemployment or indigence does not simply does not relieve one of responsibility for payment of costs. *Fairley,* 2008 WL 961592, *4; *Denson v. Northeast Illinois Regional Commuter Railroad Corporation,* 2003 WL 21506946,

9

(N.D.Ill. 2003); *Brown v. City of Chicago*, 2009 WL 723390, *2 (N.D.Ill. 2009). In *Denson*, for example, the plaintiff filed an affidavit attesting that she had not worked for over eight months, she supported herself, her two children and a grandchild, she had no savings, and she received supplemental security income benefits. The court held that while the plaintiff was presently indigent, the affidavit did not support a finding that she would be unable to pay the costs in the future. The court awarded costs but stayed the execution of the judgment until the plaintiff's circumstances changed.

In sum, the plaintiff's affidavit does not suffice here, even taking her at her word. As noted, one cannot say what tomorrow will bring for the plaintiff and her husband. It is thus inappropriate to excuse her from paying those costs the drafters of the Federal Rules of Civil Procedure have in their wisdom concluded should be awarded to the prevailing party. This is enough to resolve the motion. But there is an additional factor, which should not go unnoticed.. The plaintiff filed the suit under a false name. And as, the Seventh Circuit has cautioned in another, but not unrelated context, parties "who attempt to deceive federal judges ... cannot expect favorable treatment on matters of discretion." *Campbell v. Clarke*, 481 F.3d 967, 969 (7th Cir.2007). The legal system offers many ways to deal with problems; deceit and mendacity are not among them. *Cf.*, *Escamilla v. Jungwirth*, 426 F.3d 868, 870 (7th Cir. 2005).

An award of costs is proper even when the unsuccessful litigant had been allowed to proceed *in forma pauperis*. *Luckey*, 183 F.3d at 733-34; *McGill v. Faulkner*, 18 F.3d 456 (7th Cir.1994) "Someone has to bear the costs of litigation...." "[T]he winner has much the better claim to be spared them – not just a morally or economically better claim, but under Rule 54(d) a legally better claim." *Luckey*, 183 F.3d at 734. The defendants are entitled to their $7968.02 in costs. The only question

10

is how they defendants collect them. The parties should consider conferring to determine whether to work out a payment plan or stay the execution of the judgment on costs until the plaintiff's financial circumstances improve. If the plaintiff's affidavit is accurate, she does not have the needed funds. Of course, if the affidavit is false, she is entitled to no consideration. This will be for the defendants to determine.

For the foregoing reasons, the defendants' bill of costs is GRANTED as stated in this order.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 4/23/10